CHARLESTON & SAVANNAH RY. CO. *v.* GREEN, GAYNOR & CO.

It affirmatively appearing from the undisputed evidence introduced by the defendant that its servants exercised full diligence, and the evidence as a whole showing conclusively that the destruc-

tion of the plaintiffs' mules was not due to the defendant's neg-
ligence, a verdict for the latter was the only one legally possible in
the case.   Such a verdict having been rendered, it should not have
been set aside, even if some errors were committed by the trial
judge in charging the jury; and consequently, the court erred in
granting a new trial because, in the judge's opinion, the charge
was in some particulars erroneous.

February 5, 1895.

Action for damages.   Before Judge MACDONELL.   City
court of Savannah.   May term, 1894.

This was an action against the railroad company for
killing four mules and crippling another.   The testi-
mony for the plaintiffs tended to show, that the mules
broke loose from their inclosure at night, and wandered
about seven miles on the public road until they came to
a railroad crossing, and then walked upon the railroad
track a distance of nearly half a mile, where they
reached a very long trestle which was being filled in
with dirt by the defendant; the tracks in the soft and
newly laid earth indicated that they walked thereon,
and their bodies were found below the trestle, which was
twelve or fifteen feet high, indicating that they had been
knocked off by a train.   The testimony for the defend-
ant tended to show, that the mules were struck by an
engine drawing a passenger-train, which was running
slowly between four and five o'clock on a foggy morn-
ing in November; that they were not seen by the en-
gineer until he was within twenty steps of them, and
could not have been seen sooner on account of the fog
and darkness; and that when he did see them he applied
brakes, reversed the engine and blew the whistle, but it
was impossible to stop the train in time to avoid striking
the animals.   About thirty or forty yards from the tres-
tle was a house occupied by a watchman employed by the
defendant.   There was conflicting testimony as to the
rate of speed at which the train was running, it appear-
ing for the plaintiffs that this watchman had stated that

it was running at the rate of thirty-five miles an hour. It appeared that the killing occurred on the South Carolina side of the Savannah river, opposite Chatham county; and the defendant introduced certain sections of the general statutes of that State, forbidding the owner of any horse, mule or any other domestic animal to permit the same to run at large beyond the limits of lands owned or controlled by him; and providing that the owner shall be liable for all damages sustained by stock so trespassing. It is further provided, that any person other than the owner who shall remove, destroy or leave down any portion of an inclosure for animals, and any person who shall wilfully or negligently violate the first section mentioned, shall be guilty of a misdemeanor punishable by fine or imprisonment; and that it shall be a misdemeanor for any person wilfully to allow his team to travel outside of the road on the cultivated lands of another, etc.

The court charged the jury, that the engineer of the train would not be bound, in the exercise of ordinary care and diligence, to anticipate that the plaintiffs would violate the law and permit the stock to run at large; that defendant had a right to presume that plaintiffs were obeying the law, and not permitting the stock to run at large; that it would be for the jury to determine what, in the exercise of ordinary care, those concerned in the conduct and management of the train ought to have done; and that if they were not bound to anticipate the presence of stock running at large upon the track, they would not be bound to look out for such stock, but would only be bound to exercise ordinary care and diligence to prevent injuring it after discovering its actual presence on the track, or that it was in a place where it was liable to be injured by the train. Upon the sole ground that this charge was erroneous, the court granted a new trial after verdict for defendant.

In the order granting a new trial the judge states, that the erroneous instruction was reiterated and stressed in several parts of the charge, viz: "The railway company had the right to presume that there would be no stock on its track, if the stock law requiring owners to keep their stock fenced up was in force at the time of the killing and injury to the mules." The other grounds of the motion are not material here.

ERWIN, DUBIGNON & CHISHOLM and W. L. CLAY, for plaintiff in error. GEORGE A. MERCER & SON, *contra.*

LUMPKIN, Justice.

The official report contains a condensed statement of all the material facts developed by the evidence. It will require only a casual examination of the same to show that the company exercised the full measure of diligence required by law, and that the killing of the plaintiffs' mules was in no sense due to the negligence of the company's servants in charge of the train. This being so, a verdict for the defendant was the only outcome of the trial legally possible. Such a verdict was rendered. The trial judge set it aside and granted a new trial, not because he was dissatisfied with the verdict upon the merits of the case, but because, in his opinion, he committed an error in charging the jury. This appears from a written opinion filed by the judge, in which are set forth his reasons for granting the new trial.

The mules were killed in South Carolina, and it was contended that under the stock law of that State, the plaintiffs were negligent in permitting their mules to run at large. The court charged, in substance, that where the owners are required to keep their stock fenced in, the railroad company is not bound to expect or anticipate the presence of stock upon its track. After hearing the motion for a new trial, the judge reached the conclusion that this charge was erroneous, and for that reason alone set the verdict aside.

We do not feel called upon to consider or determine whether the charge in question was, or was not, correct. The verdict being right, and the only one which in any view of the law could have been properly rendered under the evidence, it is entirely immaterial whether the instructions of the court were correct propositions of law or not. *Taylor et al.* v. *Street*, 82 *Ga.* 723; *White & Co.* v. *Magarahan et al.*, 87 *Ga.* 217.    *Judgment reversed.*